UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

UNITED STATES OF AMERICA,

    - against -                  **MEMORANDUM & ORDER**

OMARI SCOTT,                     24-CR-158 (KAM)

          *Defendant*.

----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

Defendant Omari Scott ("Defendant" or "Scott") is charged with promotion of prostitution in violation of 18 U.S.C. § 1952 ("Count One"), sex trafficking of Jane Doe-1 in violation of 18 U.S.C. § 1591(a)(1) ("Count Two"), sex trafficking of Jane Doe-2 in violation of 18 U.S.C. § 1591(a)(1) ("Count Three"), and murder in the course of sex trafficking in violation of 18 U.S.C. § 2245 ("Count Four"). (*See* ECF No. 1, "Indictment.")

Presently before the Court are the government's motions *in limine* (1) to admit evidence of Defendant's use of violence and coercion against women on the Penn Track other than his identified trafficking victims, evidence of his interactions with other traffickers on the Penn Track, and general evidence about sex trafficking and related violence on the Penn Track; (2) to admit evidence of certain out-of-court statements that do not constitute hearsay or that fall within an exception to the bar against

hearsay; (3) to preclude evidence of and/or argument regarding certain witnesses' other sexual activities, pursuant to Federal Rule of Evidence 412; (4) to permit the government to cross-examine the defendant regarding his 2016 felony convictions if he chooses to testify; (5) to preclude any argument or evidence concerning possible punishment or collateral consequences; (6) for an order requiring the defendant to disclose Rule 16(b) materials and witness statements. (*See* ECF No. 56, "Mot.")

For the reasons below, the government's motions *in limine* are granted in part and denied in part.

<u>**BACKGROUND**</u>

According to the Indictment, between approximately January 2021 and June 2023, Omari Scott engaged in the sex trafficking of at least two women, Jane Does-1 and 2, along a stretch of Pennsylvania Avenue in Brooklyn, New York (the "Penn Track"). (Mot. at 1-2.) The government claims that, through force, fraud, and coercion, Scott would use Jane Does-1 and 2 to solicit customers on the Penn Track and other locations, and to engage in commercial sex acts with those customers in cars or in nearby hotels. (*Id.* at 1-5.) The government further asserts that Scott would collect the proceeds earned by the women he trafficked, and would use violence and threats of violence against them if these women did not continue to earn money for him. (*Id.* at 2-4.)

The government claims that, in late April 2023, Scott learned

that Jane Doe 2 was planning to leave him to work for the murder victim, Cleveland Clay ("Clay"), who also had women working for him in prostitution on the Penn Track. (*Id.* at 5-6.) Video surveillance from April 30, 2023, allegedly shows Jane Doe-2 exiting Clay's car on the Penn Track, and the Defendant pulling up shortly thereafter and violently pulling Jane Doe-2 by her hair and into his car. (*Id.*) On May 1, 2023, the day of the murder, Scott was captured on video engaged in a heated argument with Clay along the Penn Track. (*Id.*) The government further asserts that the dispute between Scott and Clay ultimately culminated in Scott and co-defendant Michael Simmons ("Simmons") deciding to murder Clay, which Simmons carried out on Scott's behalf by shooting and killing Clay shortly after 8:00 a.m. on May 1, 2023. (*Id.* at 6-7.)

## **LEGAL STANDARDS**

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). "The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence." *United States v. Kuo Chen*, No. 10-cr-671 (KAM), 2011 WL 197585, at *1 (E.D.N.Y. Jan. 20, 2011) (citing *Luce*, 469 U.S. at 40 n.2.) To the extent possible, ruling on motions *in*

*limine* in advance of trial, after the parties have been fully heard, avoids disruptive sidebars, delays, and distractions during the trial. *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.").

In considering a motion *in limine*, a trial court should only exclude evidence when it is "clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001). Where appropriate, "[a] court considering a motion *in limine* may reserve judgment until trial so that the motion is placed in the appropriate factual context." *See United States v. Ceballo*, No. 13-cr-308 (KAM), 2014 WL 4980554, at *1 (citations omitted). In its discretion, the Court may also alter a prior *in limine* ruling at trial "when the case unfolds." *Luce*, 469 U.S. at 41-42 ("The [*in limine*] ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

<u>**DISCUSSION**</u>

**I.   Evidence of Sex Trafficking and Related Violence on the Penn Track**

The government seeks to introduce witness testimony and other evidence about the general practice of trafficking women in prostitution on the Penn Track.  (Mot. at 7-18.)

First, the government states that this evidence will include the "rules" governing the conduct of the women working on the Penn Track, the interactions between pimps, including Defendant, and the punishments that the women may be subject to if she breaks any of the Penn Track "rules."  (*Id.*; ECF No. 61, "Reply," at 2.)  Defendant allegedly followed these "rules."  (Mot. at 16.)  The government asserts that this evidence will be introduced primarily via video-recordings and testimony from witnesses with first-hand knowledge.  (Reply at 2.)  The government also expects to elicit evidence and testimony of the fact that, at times, violations of these rules are met with threats and violence, including gun violence by Defendant and his fellow sex traffickers.  (*Id.* at 8.)

Second, the government expects to elicit testimony about the Defendant's relationship and interactions with other sex traffickers and women working in prostitution on the Penn Track and his participation in the business of sex trafficking on the Penn Track.  (*Id.*)  The government intends to introduce evidence about the Defendant "spending time with other traffickers,

assisting other traffickers by keeping tabs on women working for them, and sharing advice about how to best make money in prostitution and discipline women working in prostitution." (*Id.*) The government intends, for example, to introduce an October 15, 2021, recorded call where an incarcerated associate asked the Defendant to "shake [] up" the associate's "main bitch" on the track and the Defendant responded that he would "scare 'em first." (*Id.*)

Third, the government seeks to introduce testimony and evidence about minors being trafficked on the Penn Track. (*Id.* at 8-9.) The government submits that the anticipated testimony would be "limited" and concern "the occasional presence of minors working in prostitution on the Penn Track." (*Id.*) The government also seeks to introduce a November 4, 2021, phone call between Defendant and an incarcerated associate where Defendant described a female as "young" and a "baby," for whom there was a missing person's report from New Rochelle, New York, and who had briefly worked for Defendant in prostitution. (*Id.*)

Fourth, the government seeks to introduce evidence about Defendant's use of violence and coercion against women other than the named sex trafficking victims in the Indictment. (Mot. at 9-10.) Specifically, this evidence would include Defendant's interactions and relationship with Jane Doe-3, who worked in prostitution for Defendant during part of the charged time period

and passed away from an illness in April 2023. (*Id.* at 2 n.2, 9-10.) As one example, the government seeks to introduce text messages between Jane Doe-3 and Defendant, which allegedly reference Defendant's "coercive tactics and his insistence that Jane Doe 3 make money for him in prostitution despite her illness." (Mot. at 9.) As another example, the government expects to elicit witness testimony about Defendant being violent with women on the Penn Track and the Defendant's "aggressive efforts to recruit additional women to work in prostitution for him." (*Id.* at 10.)

The government asserts that all the above evidence is admissible as either (1) direct evidence of the charged crime (Mot. at 10-14); or, in the alternative, (2) as evidence of Defendant's *modus operandi*, knowledge, intent and common scheme or plan under Federal Rule of Evidence 404(b). (Mot. at 14-18.) Defendant opposes the admission of this evidence, arguing that the evidence goes beyond the scope of relevance, is unfairly prejudicial under Federal Rule of Evidence 403, or is inadmissible under Federal Rule of Evidence 404(b). (ECF No. 58, "Opp." at 1-4.) The Court will address each category of evidence in turn.

### A. Legal Standard

Direct evidence of the crimes charged in the indictment is considered relevant and admissible without reference to Rule 404(b). *See, e.g., United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989), *cert. denied*, 490 U.S. 1101 (1989). "To be relevant,

evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *United States v. Williams*, 585 F.3d 703, 707 (2d Cir. 2009) (internal citation omitted).

Moreover, the Second Circuit in *United States v. Carboni*, 204 F.3d 39 (2d Cir. 2000), found that "evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *Id.* at 44 (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997)). "Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *Gonzalez*, 110 F.3d at 941 (quoting *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991)).

### B. Evidence of the "Rules" of the Penn Track

Based on the government's proffer of the evidence, the Court finds that evidence of the "rules" of the Penn Track satisfies the *Carboni* standard, so long as the government submits evidence that Defendant observed and/or enforced the "rules." Defendant is charged with, *inter alia*, the promotion of prostitution in violation of 18 U.S.C. § 1952(a)(3) ("Count One"). The

government's proffered evidence of the Penn Track "rules" and Defendant's adherence to, and enforcement of, the rules with others engaged in sex trafficking serves as direct evidence of the charged offenses of promoting prostitution and sex trafficking, and as background evidence of relationship-establishing that is directly admissible to "complete the story" of the crimes charged. Similarly, evidence of the Defendant's involvement with trafficking individuals other than Jane Does-1 and 2, is relevant to, and direct evidence of promoting prostitution, and provides background and context. *See United States v. Robinson*, 702 F.3d 22, 26 (2d Cir. 2012) (finding that evidence of the defendant's involvement with other uncharged prostituted women was directly admissible to "complete the story" of the crimes charged and establish the relationship between the defendant and the victim); *United States v. Thompson*, 178 F. Supp, 3d 86, 94-95 (W.D.N.Y. 2016) (finding evidence of the defendant supplying intoxicants to the charged and uncharged victims and having sexual relations with them was admissible as directly relevant to the charged crimes or as background evidence.)

Evidence of the Penn Track "rules" is also "inextricably intertwined" to the charged offenses, provided that the government shows Defendant's involvement with applying or enforcing those rules. Specifically, the government seeks to admit evidence showing that these "rules" require the women to give all of the

money earned in prostitution to their pimp, require the women to remain in the street and not step onto the sidewalk, and require the women to obey their pimp. (Reply at 2.) Even if the Penn Track "rules" evidence does not directly establish an element of the offenses, this evidence "adds context and dimension to the government's proof of the charges[]" and is therefore relevant and admissible as direct evidence of the charged offenses. *Gonzalez*, 110 F.3d at 941. Defendant argues that evidence of the Penn Track "rules" is unduly prejudicial and should be excluded under Federal Rule of Civil Procedure 403. (Opp. at 3-4.) The Court disagrees that the probative value of this "rules" evidence is substantially outweighed by a danger of unfair prejudice to Defendant. *See* Fed. R. Evid. 403. Evidence of the Penn Track "rules," and Defendant's adherence to them, would be no more inflammatory than the sex trafficking charges already at issue. Accordingly, the Court finds evidence of the Penn Track "rules" to be relevant and admissible as direct evidence under Rule 402, and its probative value is not substantially outweighed by the risk of unfair prejudice under Rule 403.

## C.   Evidence of Defendant's Interactions and Relationships with Other Pimps

Likewise, evidence of the Defendant's interactions and relationships with other pimps, including where Defendant enforced the "rules" of the Penn Track by offering to "scare" prostitutes on another pimp's behalf, is admissible as direct evidence of Count One, the promotion of prostitution.  The government proffers that this evidence will "explain[] the origins of the defendant's sex trafficking operations at the Penn Track, his ability to manage and promote his sex trafficking enterprise, and his use of the rules of the Penn Track to control and coerce the women he sex trafficked."  The Court agrees that the proffered evidence is directly relevant to the charges that the government must prove, and is thus admissible as direct evidence of the charged offenses. The Court also finds, in its discretion, that the probative value of the proffered evidence is not substantially outweighed by its prejudicial value.  *See* Fed. R. Evid. 403.

## D.   Evidence of Defendant's Use of Coercive and Violent Tactics Against Victims Other Than Jane Does-1 and 2

Evidence of Defendant's use of coercive and violent tactics with prostitutes other than Jane Does-1 and 2 is also direct evidence of the charged offenses.  Defendant is charged in Count One with promoting prostitution, in violation of 18 U.S.C. § 1952(a)(3)(A), from in or about and between January 2021 through May 2023.  (*See* Reply at 3.)  To the extent the proffered evidence

shows that Defendant had women working for him in prostitution during the relevant time period, such evidence is admissible as direct evidence of Count One even if the evidence concerns uncharged victims. *See United States v. Overton*, No. 15-cr-9S(WMS), 2017 WL 6347084, at *5 (W.D.N.Y. Dec. 13, 2017) (finding evidence of defendant's conduct with other uncharged victims to satisfy the *Carboni* standard). At trial, the government will still be required to sufficiently link this evidence with the charged offenses, and Defendant remains free to argue to the jury if the government has failed to make that showing. However, the Court further notes that this evidence is also admissible under Rule 404(b) as evidence of intent, preparation, plan, absence of mistake, or lack of accident. *See United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004) (noting that under the Second Circuit's "inclusionary approach," other-act evidence may be admitted for any purpose other than to show a defendant's criminal propensity). The Court further finds, in its discretion, that the probative value of this evidence is not substantially outweighed by its prejudicial value. Accordingly, the Court finds that evidence of Defendant's use of coercive and violent tactics with uncharged victims other than Jane Does-1 and 2 is relevant and admissible.

### E. Evidence of Minors Working in Prostitution on the Penn Track

As for the government's motion to present evidence that minors occasionally worked on the Penn Track as prostitutes, the Court finds that even if such evidence was relevant direct evidence of Defendant's charged offenses, evidence of minors should be excluded under Rule 403 as its probative value is substantially outweighed by the risk of unfair prejudice. *See* Fed. R. Evid. 403. Defendant was not charged with any offenses involving minors, nor are minors mentioned in any allegations relating to Defendant's charged offenses. Evidence of minors working in prostitution for Defendant or others on the Penn Track would be highly inflammatory and unduly prejudicial. Moreover, it is unclear what probative purpose, if any, evidence of minor sex trafficking victims would serve beyond that provided by evidence of non-minors working as prostitutes on the Penn Track. Accordingly, the government's motion *in limine* to admit evidence involving minors on the Penn Track is denied without prejudice.[1]

## II. Out-of-Court Statements

The government seeks to introduce the following categories of

---

[1] Because the Court finds that evidence of the Penn Track "rules," the Defendant's interactions and relationship with other pimps and individuals working in prostitution, and the Defendant's use of coercive and violent tactics with victims other than Jane Does-1 and 2 are admissible as relevant and direct evidence, the Court need not assess the same evidence under Fed. R. Evid. 404(b). Even so, the proffered evidence would also be admissible under Rule 404(b)(2).

Under Rule 404(b), evidence of "any other crime, wrong, or act is not admissible

out-of-court statements:

(1) the Defendant's own statements made to his co-conspirators, associates and victims;

(2) messages by and between Jane Doe-1 and Jane Doe-2 about their prostitution work for the Defendant;

(3) messages between Jane Doe-2 and Clay about their plan for Jane Doe-2 to leave the Defendant to work for Clay in prostitution;

(4) messages between Clay and his associate about Clay's dispute with the Defendant over Jane Doe-2; and

(5) messages between Simmons and a woman who worked for him in prostitution.

(Mot at 19, 25.) The government argues that each of these statements are admissible because they either do not constitute hearsay or they fall under an exception to the hearsay rule.[2]

_____

to prove a person's character," but may be admitted "to prove a defendant's intent or knowledge when those elements are in dispute." *United States v. Priolo*, No. 21-cr-566 (NJC), 2025 WL 679413, at *13 (E.D.N.Y. Mar. 4, 2025); Fed. R. Evid. 404(b). Notably, the Second Circuit has adopted an "inclusionary approach to evaluating Rule 404(b) evidence." *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003). Here, the Court finds that evidence of the Penn Track "rules," Defendant's interactions with other traffickers and prostitutes, and Defendant's interactions with other victims, is admissible to show that Defendant knew of the trafficking activity, intended to play a specific role in sex trafficking, and did not participate in sex trafficking by mistake. *See United States v. Hamlett*, No. 3:18-cr-24(VAB), 2018 WL 4854627, at *2 (D. Conn. Oct. 5, 2018) (finding that the evidence was admissible under Rule 404(b)(2) because it "illustrat[ed] [defendant's] planning and preparation for commercial sex acts of the complainants, including advertising their services, knowledge of client appointments to meet with them, facilitating their commercial sex acts, and absence of a mistake in promoting their prostitution.").

[2] To the extent that specific out-of-court statements discussed herein are deemed admissible, the Court also admits the statements that, even if hearsay, are "necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007)(citing *United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987), *cert. denied*, 484 U.S. 844 (1987) (citations omitted). Federal Rule of Evidence 106 provides, in relevant part, that "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at

14

(*Id.*)

## A. Defendant's Statements to Co-Conspirators, Associates, and Victims

The Federal Rules of Evidence ("FRE") generally exclude as hearsay any statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c); *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("In general, hearsay statements are not admissible at trial.") (citing Fed. R. Evid. 802). A party's own statement, however, is not hearsay when offered by the party's opponent against the party. Fed. R. Evid. 801(d)(2)(A).

The government argues that the Defendant's statements made to his associates and victims, are not hearsay under Rule 801(d)(2), or in the alternative, fall under the hearsay exception for statements against penal interest under Rule 804(b)(3). As stated in Rule 801(d)(2), statements "offered against an opposing party" are "not hearsay." Fed. R. Evid. 802(d)(2). Here, the government intends to offer Defendant's statement against him. Thus, Defendant's own statements to his associates – *i.e.*, the incarcerated associate and Mr. Welch – are clearly admissible as

---

that time, of any other part – or any other statement – that in fairness ought to be considered at the same time." Fed. R. Evid. 106. By its terms, Federal Rule of Evidence 106, which codifies the "rule of completeness," is a rule of admissibility. *See United States v. Avenatti*, 559 F. Supp. 3d 274, 281 (S.D.N.Y. 2021).

relevant, opposing party statements under Rule 801(d)(2)(A). Statements from Defendant to Jane Does-1 and 2 are also undoubtedly relevant to the charged offenses and admissible under Rule 801(d)(2). The Court therefore need not reach the government's alternative argument under Rule 804(b)(3), and the Court further finds in its discretion that, under Rule 403, the probative value of this evidence is not substantially outweighed by the risk of unfair prejudice.

### B. Statements Between Jane Doe-1 and Jane Doe-2

As to the second category of statements that the government seeks to admit, the government argues that the statements between Jane Doe-1 and Jane Doe-2 are admissible as statements of the declarant's then-existing state of mind under Rule 803(3), or in the alternative, as statements against penal interest pursuant to Rule 804(b)(3). As one example, the government asserts that text messages between Jane Doe-1 and Jane Doe-2 where they express their "belief" that the Defendant would be "happy" and "proud" of their prostitution earnings would be admissible under Rule 803(3). The government provides no other examples of statements between Jane Doe-1 and Jane Doe-2 in its motion *in limine*.

A statement that relates to a declarant's state of mind – including motive, intent, or plan – at the time the declarant made the statement is not excluded by the rule against hearsay and may be admitted if otherwise admissible. *See* Fed. R. Evid. 803(3);

*United States v. Cardascia*, 951 F.2d 474, 487-88 (2d Cir. 1991). Thus, the statements between Jane Does-1 and 2 expressing how they hope Defendant would be "proud" and "happy" about their earnings are admissible under Rule 803(3). Without knowing the contents of the other messages that the government seeks to admit, however, the Court does not have sufficient information to know whether such statements would be admissible as non-hearsay or in an applicable hearsay exception.

Rule 804(b)(3) provides that, where the declarant is unavailable, a statement is "not excluded by the rule against hearsay" if it is one that: "(A) a reasonable person in the declarant's position would have made only if the person believed it be true because, when made, it . . . had so great a tendency to . . . expose the declarant to civil or criminal liability; and (B) is supported by corroborating circumstances that clearly indicate its trustworthiness." Fed. R. Evid. 804(b)(3). The government argues that, in the alternative, Rule 804(b)(3) would allow for statements between Jane Doe-1 and Jane Doe-2 to be admitted as statements believed to be true when made and that would expose the declarants to criminal liability, if supported by corroborating circumstances vindicating their trustworthiness. If the witnesses are unavailable, the Court finds at this time that there is a sufficient basis as to the above-described statements to admit them under Rule 804(b)(3). As to other statements between Jane

Does-1 and 2, the Court finds that there is insufficient information to rule on Rule 804(b)(3)'s applicability.

A declarant is "unavailable" if the declarant is, *inter alia*, "exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies[.]" Fed. R. Evid. 804(a)(1). The Second Circuit has held that a witness's invocation of their Fifth Amendment privilege would render them "unavailable" within the meaning contemplated by Rule 804(a)(1). *See United States v. Williams*, 927 F.2d 95, 98-99 (2d Cir. 1991) (holding that a witness is "unavailable" within the meaning of Rule 804(a)(1) where he invokes the Fifth). The government has not indicated that either Jane Doe-1 or Jane Doe-2 intends to invoke their Fifth Amendment privilege, rendering them "unavailable" to testify. Accordingly, aside from the text messages discussed above as admissible under Rule 803(3), the government's request to admit Jane Doe-1's or Jane Doe-2's other out-of-court statements under this exception is denied without prejudice.

### C.    Statements Between Clay and Jane Doe-2

As to the third category of statements the government seeks to introduce, the government argues that statements between Clay and Jane Doe-2 are admissible as statements against penal interest under Rule 804(b)(3). The government proffers that Clay's and Jane Doe-2's statements discuss Clay's promotion of, and Jane Doe-

2's involvement in prostitution, including Clay's attempts to have Jane Doe-2 work for him in prostitution. (Mot. at 26.) The Court finds that Clay, being now deceased, is "unavailable," for the purposes of Rule 804(b), and the statements are against both Clay's and Jane Doe-2's penal interests. The Court further finds in its discretion that, under Rule 403, the probative value of this evidence is not substantially outweighed by the risk of unfair prejudice. Accordingly, Clay's and Jane Doe-2's out-of-court statements are relevant and admissible.

### D. Statements Between Clay and his Associate Regarding Trafficking Activities

As to the fourth category of statements the government seeks to introduce, the government argues that statements between Clay and his associate about his sex trafficking activities and his dispute with Defendant over Jane Doe-2 are admissible as statements against penal interest under Rule 804(b)(3). For the same reasons as set forth in the preceding paragraph, the Court also finds these statements to be relevant and admissible. The statements are relevant, direct evidence of the offenses charged in Counts One, Three, and Four, and their probative value is not outweighed by the risk of undue prejudice.

### E. Statements Between Simmons and a Woman Working for Simmons in Prostitution

The fifth category of out-of-court statements the government seeks to introduce is two sets of text messages between Simmons

and a woman who worked for him in prostitution. (Mot. at 26-27.) The first text exchange took place on May 1, 2023, hours before Clay's murder, and involved contemporaneous messages leading up to and shortly after Clay's murder. (*Id.*) The second text exchange took place on May 17, 2025, and included messages to Simmons saying that he "threw his life away for [Defendant and Jane Doe-2]." (*Id.*)

The government argues that statements between Simmons and a woman who worked in prostitution for him are admissible as statements against Simmons's penal interest under Rule 804(b)(3). (*Id.*) In the alternative, the government argues that these statements are not being offered for their truth, or are questions or commands not constituting hearsay. (*Id.* at 27.) The government further argues that these statements are admissible as present sense impressions under Rule 803(1), as excited utterances under Rule 803(2), and as statements of a party opponent under Rule 801(d)(2).

### i. Statement of a Party Opponent Under Rule 801(d)(2)

A party's co-conspirator's statement made during and in furtherance of the conspiracy is not hearsay when offered by the party's opponent against the party. Fed. R. Evid. 801(d)(2)(E). However, a co-conspirator's statements would only be admissible under Federal Rule of Evidence 801(d)(2)(E) as statements of co-conspirators if "a preponderance of the evidence establishes that

20

a conspiracy existed, that the defendant and declarant were members, and that the statements were made during the course of and in furtherance of the conspiracy." *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993).

Defendant argues that he "is not charged with conspiracy so the government cannot justify admitting the evidence as evidence of a conspiracy." (Opp. at 3.) "Of course, a co-conspirator's statement is admissible if it was made pursuant to any conspiracy, *whether charged or uncharged*." *United States v. Wedd*, 993 F.3d 104, 117 n.6 (2d Cir. 2021) (emphasis added); *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 962 (2d Cir. 1990) ("Though . . . Fed. R. Evid 801(d)(2)(E) requires proof that both the declarant and the party against whom a declaration is offered be members of the same conspiracy, it does not require that the conspiracy be one charged in the indictment.") (citation omitted).

Assuming, without finding, that Defendant was engaged in a conspiracy with Simmons, all of Simmons's statements would thus be admissible as statements of a party opponent when offered against Defendant, assuming again that the statements are relevant and not unduly prejudicial. *See* Fed. R. Evid. 801(d)(2); Fed. R. Evid. 403. At trial, if the government can show the existence of a conspiracy by a preponderance of the evidence, Simmons's statements would be admissible under Rule 801(d)(2). Accordingly, the government's motion *in limine* to admit Simmons' statements on

Rule 801(d)(2) grounds is denied without prejudice.

### ii. Alternative Grounds for Admission

Alternatively, Rule 803(1) provides that certain statements are "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness" where the declarant's statement is "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1).

Simmons' text message on May 1, 2023, contemporaneously observing and stating that "[Defendant] got [Jane Doe-2] in the car," is thus admissible pursuant to Rule 803(1). Simmons' other text messages on May 1, 2023, may also be admissible as statements against penal interest since the statements may discuss Simmons' promotion of prostitution. However, the government has not indicated that Simmons intends to invoke his Fifth Amendment privilege, thereby rendering him "unavailable" to testify. Thus, aside from the messages containing contemporaneous observations as discussed above, the government's motion *in limine* to admit Simmons' May 1, 2025, text messages is denied without prejudice to renew at trial.

As to Simmons' May 17, 2025, text messages with a woman who worked for him in prostitution, the government argues that the woman's message to Simmons to "go be with [Defendant] and [Jane Doe-2]" because Simmons "threw [his] life away for them," is a

command and thus not hearsay. (Mot. at 27.) *See United States v. Bellomo*, 176 F.3d 580, 586 (1999) ("Statements offered as evidence of commands . . . rather than for the truth of the matter asserted therein, are not hearsay."). The government proffers that such statements are being offered as evidence of a command, and not for the truth of the matter asserted. (Mot. at 27.) The Court finds that the government has not shown that evidence of a command to Simmons, made two weeks after the murder, to "go to [Defendant] and [Jane Doe-2]" is sufficiently relevant. *See* Fed. R. Evid. 402. Depending on the contents and contexts of the messages, these messages may be admissible at trial as statements against Simmons's penal interest, provided that Simmons is "unavailable" to testify. Thus, at this time, the government's motion *in limine* to admit the May 17, 2025, statements between Simmons and the woman working for him in prostitution, is denied without prejudice to renew at trial.

**III. Evidence of and Argument Regarding Certain Witnesses' Involvement in Other Sexual Behavior**

The government seeks to preclude Defendant from arguing that any other sexual behavior by any of the Jane Doe victims and any other witnesses in this case is evidence that the Defendant did not use force, fraud and coercion to cause the victims to engage in prostitution. (Mot. at 27.) According to the government, certain witnesses have previously provided information about engaging in prostitution outside of their relationships with the

Defendant. (*Id.*) The government does not object to Defendant cross-examining these witnesses with respect to the content of their direct examination. (*Id.*) Pursuant to FRE 412, the government moves to preclude evidence, including regarding the witnesses' involvement in other sexual behavior, or using the witnesses' sexual history in arguments to the jury. (*Id.*)

Defendant opposed the government's motion and cross-moved, pursuant to Federal Rule of Evidence 412(c), to argue and admit evidence regarding the Jane Does working in prostitution for people other than Defendant. (Opp. at 6.) The docket does not reflect that Defendant served notice of his cross-motion on the alleged victims, or, if applicable, their guardian(s) as required by Federal Rule of Evidence 412(c)(1)(C). In his opposition, Defendant also fails to identify which, if any, of the three delineated exceptions of Rule 412(b)(1)(A)-(C) applies to support admission of the proffered evidence. Rather, Defendant merely argues that the government seeks to admit certain other "limited testimony regarding [the witnesses'] prior prostitution-related activity, in order to put their testimony into context[,]" but seeks to exclude other evidence regarding the witnesses' involvement in sexual behavior. (Opp. at 5.) Defendant further asserts that his right to confront the witnesses and to present a defense includes his right to introduce evidence which supports a conclusion that the Jane Does were working as prostitutes for

others, not Defendant, and that the Jane Does have "inaccurately minimized their involvement as sex workers with others." (*Id.*) Accordingly, the Court construes Defendant's cross-motion to invoke the exception for admission under Rule 412(b)(1)(C).

### A. The Government's Motion to Exclude Under Rule 412

Federal Rule of Evidence 412 forbids the admission of "evidence offered to prove that a victim engaged in other sexual behavior" or "evidence offered to prove a victim's sexual predisposition" in "a civil or criminal proceeding involving alleged sexual misconduct." Fed. R. Evid. 412(a). "The purpose of the rule is to protect against invasions of privacy, potential embarrassment, and salaciousness." *See Thompson*, 178 F. Supp. 3d at 90 (citing advisory committee's note to 1994 amendment to Rule 412). Moreover, the Second Circuit has upheld the application of Rule 412 in cases of sex trafficking and interstate prostitution. *See, e.g.*, *United States v. Alvarez*, 601 F. App'x 16, 18 (2d Cir. 2015) (summary order) (applying Rule 412 where defendant was charged with counts of interstate prostitution pursuant to 18 U.S.C. § 2422(a) and sex trafficking pursuant to 18 U.S.C. § 1591).

The witnesses' prior sexual behavior, including their history of prostitution prior to their involvement with Defendant, is not only inadmissible as prescribed in Rule 412, but also irrelevant to determining whether the Defendant promoted prostitution and committed the charged sex trafficking offense through force,

fraud, or coercion. *See United States v. Rivera*, No. 13-cr-149(KAM), 2015 WL 1886967, at *5 (E.D.N.Y. Apr. 24, 2015); *United States v. Roy*, 781 F.3d 416, 2015 WL 1283827, at *3 (8th Cir. 2015) (excluding evidence of victim's prior prostitution as irrelevant to defendant's charged conduct); *United States v. Valenzuela*, 495 F. App'x 817, 819-20 (9th Cir. 2012) (per curiam) ("Appellants cannot show the relevance of questions about prior prostitution to either Appellants' knowledge of the use of force, fraud, or coercion, or the victims' consent to work in prostitution."); *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012) ("They wanted to suggest that having already been a prostitute she would not have been deceived by [the defendant] and therefore her testimony that she was coerced into working for him – an element of one of the charged offenses when the prostitute is not a minor, 18 U.S.C. § 1591(a) – should be disbelieved. But the testimony sought to be elicited by the cross-examination would have been irrelevant.").

As noted above, the government has indicated that it intends to elicit "limited testimony regarding [the witnesses'] prior prostitution-related activity, in order to put their testimony into context[.]" (Mot. at 28.) The Court is unpersuaded that this evidence of a witness's prior sexual history, whether offered by the Defendant or the government, will have probative value that outweighs the substantial risk of unfair prejudice that it poses.

Thus, at this time, the Court finds that any evidence of a witness's prior sexual history is inadmissible pursuant to Rules 412 and 403.

**B.    Defendant's Cross-Motion to Admit Evidence of Sexual Behavior Under Rule 412(c)**

Rule 412(b)(1) delineates three exceptions permitting the admission of "sexual behavior" evidence in a criminal case:

(1)    Evidence of specific instances of a victim's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;

(2)    Evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor;

(3)    Evidence whose exclusion would violate the defendant's constitutional rights.

Fed. R. Evid. 412(b)(1).   Pursuant to Rule 412(c), if a party intends to offer evidence under one of the Rule 412(b) exceptions, the party must, *inter alia*, at least fourteen days before trial "file a motion that specifically describes the evidence and states the purpose for which it is to be offered" and "notify the victim or, when appropriate, the victim's guardian or representative." Fed. R. Evid. 412(c)(1).   Before admitting the evidence, the court must conduct an *in camera* hearing and give the victims and parties a right to attend and be heard.   Fed. R. Evid. 412(c)(2).

Defendant's cross-motion under Rule 412(c) is timely but procedurally defective.   First, there is no indication that

Defendant has provided the requisite notice to the affected victims. Additionally, even if Defendant had properly provided notice, he does not describe the evidence he seeks to admit with requisite specificity. Rather, Defendant vaguely describes the evidence merely as "relevant evidence" supporting "the conclusion that the Jane Does were working for others, not for Scott, and that the Jane Does, in their testimony (or in any hearsay statements admitted in lieu of testimony), have inaccurately minimized their involvement as sex workers with others." (Opp. at 6.) This generalized description fails to describe with particularity what evidence Defendant seeks to offer about the victim's other sexual behavior at trial, and fails to meet the specificity standard prescribed in Rule 412(c)(1)(A). Without a more particularized description, the Court is also unable to consider whether the exclusion of such evidence would violate Defendant's constitutional rights. *See* Fed. R. Evid. 412(b)(1)(C). Accordingly, Defendants' cross-motion to admit "sexual behavior" evidence under Rule 412(c) is denied without prejudice. Defendant may renew this motion no later than May 15, 2025, provided that he adheres to the procedures in Rule 412(c).

IV. **Impeachment of Defendant with Prior Weapons and Narcotics Convictions**

The government argues that, should Defendant choose to testify at trial, the government should be permitted to impeach

the Defendant with his December 20, 2016 convictions for Criminal Possession of a Firearm, Ammunition or Electronic Defense Weapon, in violation of Connecticut Penal Code Section 53a-217, Sale of a Controlled Substance, in violation of Connecticut General Statutes Section 21a-277, Failure to Appear in the First Degree, in violation of Connecticut Penal Code Section 53a-172, for which he was sentenced to total concurrent sentences of six years in prison. (Mot. at 34.) Defendant, in his response, asks the Court to reserve on the issue until trial in the event that he wishes to testify. (Opp. at 7.)

Federal Rule of Evidence 609 applies to attacking a witness's character for truthfulness with evidence of a criminal conviction. In relevant part, Rule 609 provides: "for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence . . . must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1). Rule 609(b) imposes a ten-year limitation that "applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b). If more than ten years have passed, "[e]vidence of the conviction is admissible only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its

prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b).

In weighing the probative value of the evidence of the prior conviction against its prejudicial effect, courts in this Circuit consider the following factors: "[1] the impeachment value of the prior crimes, [2] the date of the conviction and the Defendant's subsequent history, [3] the degree of similarity between the past crimes and this crime, [with dissimilarity favoring admission] [4] the importance of the Defendant's testimony, and [5] the centrality of the Defendant's credibility in this case." *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977) (citations omitted). "Although all of these factors are relevant, "[p]rime among them is [the first factor, *i.e.*] whether the crime, by its nature, is probative of a lack of veracity." *United States v.* Ortiz, 553 F.2d 782, 784 (2d Cir. 1977).

The government bears the burden of showing that the probative value of a prior conviction outweighs its prejudicial effect. *See United States v. White*, 312 F. Supp. 3d 355, 359 (E.D.N.Y. 2018) (citing *Hayes*, 553 F.2d at 828). "When evidence of a prior conviction is admitted, the presumption is that only the 'essential facts' of the prior conviction – which include 'the statutory name of each offense, the date of conviction, and the sentence imposed' – will be admitted for purposes of impeachment." *White*, 312 F.

Supp. 3d at 359 (citing *United States v. Estrada*, 430 F.3d 606, 615-16 (2d Cir. 2005)).

Here, Defendant was previously convicted of (1) Criminal Possession of a Firearm, Ammunition or Electronic Defense Weapon, in violation of Connecticut Penal Code Section 53a-217, (2) Sale of a Controlled Substance, in violation of Connecticut General Statutes Section 21a-277, and (3) Failure to Appear in the First Degree, in violation of Connecticut Penal Code Section 53a-172. The Court will address each conviction in turn.

### A. Admissibility of Defendant's 2016 Conviction for Criminal Possession of a Firearm, Ammunition or Electronic Defense Weapon

In the event that Defendant chooses to testify, the government seeks to cross-examine Defendant on his December 2016 conviction for criminal possession of a firearm, ammunition, or electronic defense weapon. As an initial matter, Defendant's firearm conviction falls within Rule 609's ten-year period, and is thus subject to the "more lenient" balancing test under Rule 609(a). (Mot. at 36.); *see United States v. Brown*, 606 F. Supp. 2d 306, 315 (E.D.N.Y. 2009).

As to the first factor, the Court recognizes that "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully." *Estrada*, 430 F.3d at 617. The Court finds that attacking a witness's character for truthfulness with a conviction for

31

possession of a firearm and ammunition has minimal impeachment value. "Illegally possessing a firearm is not an example of prior untruthfulness nor is it a crime of deception, and such a conviction does not offer insight into how credible a witness . . . would be." *United States v. Agostini*, 280 F. Supp. 2d 260, 262(S.D.N.Y. 2003); *United States v. Joe*, No. 07-cr-734(JFK), 2008 WL 2810169, at *4 (S.D.N.Y. July 21, 2008) (courts have found that prior convictions for gun possession are "not very probative of an untruthful character" as they do not "'rest on dishonest conduct.'") (quoting *Estrada*, 430 F.3d at 617-18.)

As to the second factor regarding the date of conviction, the Court finds this factor weighs against admission. Defendant's December 20, 2016 firearms conviction is more than eight years old. Though, as noted above, "any conviction within the ten-year statutory limit set forth in 609(b) is 'subject to the more lenient balancing test of Rule 609(a)(1)(B) . . . convictions within the latter half of the ten-year period have diminishing probative value." *White*, 312 F. Supp. 3d at 360. The conviction here falls in the latter half of the ten-year period, and therefore has decreased probative value.

With respect to the third factor on the degree of similarity between the past and charged offense, the Court finds this factor to weigh slightly against admission. "The less similar the pending case to the prior conviction, the less prejudicial its admission

is." *Stephen v. Hanley*, No. 03-cv-6226(KAM)(LB), 2009 WL 1471180, at *5 (E.D.N.Y. May 21, 2009).  Though the crimes of promoting prostitution, sex trafficking and murder are not facially similar to an offense of firearm possession, a gun was used in the charged offenses to kill Defendant's rival pimp.  Thus, evidence of a prior firearm possession offense may still be prejudicial because juries may view the conviction as "suggestive of a propensity to engage in crime that may involve a firearm" and that therefore "the jury is more likely to view the testifying Defendant as having a propensity to commit crime (and to carry a gun) than having a propensity to be dishonest."  *United States v. White*, No. 06-cr-0682(NGG), 2009 WL 4730234, at *6 (E.D.N.Y. Dec. 4, 2009).

In assessing the fourth factor regarding the "centrality of the Defendant's credibility," the Court finds this factor to weigh slightly against admission.  The government asserts that "if the defendant testifies, his credibility will be central to the jury's determination of the facts at issue."  (Mot. at 36.)  When "the credibility of a given witness is particularly important because there is little other documentary or supporting evidence and 'success at trial probably hinges entirely on [the witness's] credibility with the jury,'" this factor would weigh in favor of admission.  *United States v. Vasquez*, 840 F. Supp. 2d 564, 572 (E.D.N.Y. 2011) (citing *Jones*, 2002 WL 207008, at *3).  Here, however, the government has not made any assertions that the trial

would hinge substantially on Defendant's testimony in the absence of documentary or other supporting evidence.

Lastly, based on the current record, the Court is unable to consider the fifth factor – the "importance to [defendant's] defense of having him testify free from the prejudice which might be created by reference to [the prior conviction]." *United States v. Washington*, 746 F.2d 104, 106 (2d Cir. 1984) (quoting *United States v. Costa*, 425 F.2d 950, 954 (2d Cir. 1969), *cert. denied*, 398 U.S. 938 (1970)). Neither the government nor Defendant make any meaningful arguments as to the importance of Defendant's testimony. Accordingly, the Court finds this factor to neither weigh in favor of nor against admission.

Based on the foregoing considerations, factors one to four currently weigh against the admission of Defendant's December 20, 2016 conviction under Rule 609(a). However, the Court finds that the risk of prejudice of this conviction can be eliminated by prohibiting the government from inquiring into "the nature or statutory name of [the] offense," while still allowing it to inquire into the other "essential facts," namely the fact of the felony conviction, the date, and the length of the sentence. *Estrada*, 430 F.3d at 616. On this record, the Court therefore denies in part and grants in part the government's motion *in limine* to cross-examine the Defendant on his prior firearm possession conviction. The government may, on cross-examination, inquire

into the fact of the felony conviction, the date, and the length of the sentence. The Court's ruling, however, is subject to modification depending upon Defendant's testimony, should he choose to testify. *See White*, 2009 WL 4730234, at *6. If Defendant testifies to facts or issues which can be contradicted or impeached by evidence of his prior convictions, the Court will reconsider the scope of its ruling. *See Vasquez*, 840 F. Supp. 2d 564, 573 (citing *United States v. Maisonneuve*, 954 F. Supp. 114, 117-18 (D. Vt. 1997)).

## B. Admissibility of Defendant's 2016 Conviction for Sale of a Controlled Substance

As with Defendant's conviction for possession of a firearm, ammunition, or electronic defense weapon, Defendant's conviction for sale of a controlled substance falls within the ten-year limitations period prescribed by Rule 609(b). For the same reasons as discussed above with Defendant's conviction for possession of a firearm, the Court similarly finds that the second and fourth factor weigh against admission, and the fifth factor to weigh neither in favor of nor against admission.

As to the first factor, courts in this Circuit have found that, "[a]lthough the sale of drugs may be more probative for purposes of impeachment than mere possession as this court has found, . . . the sale of drugs is not as probative of credibility as drug smuggling or conspiracy, which are likely to involve acts

of dishonesty or deceit[.]" *Vasquez*, 840 F. Supp. 2d at 569-70. The government has not provided any support for a finding that Defendant's past conviction for the sale of narcotics involved acts of dishonesty or deceit. Accordingly, the Court finds, on this record, that the impeachment value of Defendant's conviction for sale of a controlled substance, while higher than for mere drug possession, is still moderately low on the scale of veracity-related crimes, particularly when compared to other drug crimes such as smuggling or conspiracy that are more probative of credibility. *See Hayes*, 553 F.2d at 828 n.8 ("In terms of credibility a conviction for sale of narcotics may fall somewhere between a conviction for narcotics smuggling and one for narcotics possession.") (citing *Ortiz*, 553 F.2d at 784).

As to the third "similarity" factor, the Court is concerned that a drug sale conviction is "suggestive of a propensity to engage in crime that may involve a firearm" because juries may view guns as "tools of the drug trade." *United States v. Jackson*, No. 19-cr-356(ARR), 2020 WL 7063566 (E.D.N.Y. Dec. 2, 2020) (citing *Vasquez*, 840 F. Supp. 2d at 571). Here, Defendant is being charged with the murder of Cleveland Clay using a firearm. Accordingly, the Court finds that admission of this conviction is more likely to be prejudicial, and the third factor weighs against admission.

As an additional point of consideration, the Court is mindful that permitting the government to cross-examine Defendant on

multiple prior convictions would have an impermissible "piling on" effect. *See Brown*, 606 F. Supp. 2d at 314; *Daniels v. Loizzo*, 986 F. Supp. 245, 252 (S.D.N.Y. 1997); Fed. R. Evid. 403 ("evidence may be excluded if its probative value is substantially outweighed by the . . . needless presentation of cumulative evidence"). Thus, based on the foregoing considerations, the Court denies the government's motion *in limine* to admit evidence of Defendant's December 2016 conviction for sale of a controlled substance. As discussed above, the Court's ruling is subject to modification if Defendant chooses to testify and modification is necessary.

### C. Admissibility of Defendant's 2016 Conviction for Failure to Appear

The government also seeks to admit Defendant's December 2016 conviction for failure to appear. For the same reasons discussed above with Defendant's other two 2016 convictions, the Court similarly finds here that the second and fourth factor weigh slightly against admission, and the fifth factor weighs neither in favor of nor against admission.

Here, though Defendant's failure to appear conviction "bears no resemblance" to the charged offenses, the Court finds that, without more, Defendant's conviction for failure to appear does not bear on elements of veracity and honesty, and the government does not assert that Defendant used deceit or dishonesty when committing the failure to appear offense. Indeed, several courts

have found that acts akin to failure to appear are *not* probative of a witness's character for truthfulness. *See United States v. Vasquez*, 840 F. Supp. 2d 564, 574-75 (E.D.N.Y. 2011) (collecting cases); *United States v. Colella*, No. 88-cr-538, 1989 WL 89212, at *9-10 (E.D. Pa. Aug. 1, 1989) (finding that a failure to appear at trial, alleged violations of probation, and contempts of court do not bear on a witness's truthfulness within the meaning of Rule 608(b)); *United States v. Montrose*, 15 F. App'x. 89, 90 (4th Cir. 2001) (affirming district court's decision to disallow impeachment based on a witness's probation violation because there was no dishonesty involved). Accordingly, on this record, Defendant's former conviction for failure to appear is unlikely to be probative of his veracity and honesty.

As with the Court's decisions regarding Defendant's other prior convictions discussed above, the Court's ruling is subject to modification depending on the content of Defendant's testimony. If Defendant testifies to facts or issues which can be contradicted by evidence of the failure to appear conviction, the Court will permit the government to request reconsideration of the Court's ruling.

## V. Evidence or Argument Concerning Possible Punishment or Collateral Consequences

The government moves to preclude at trial any discussion of the possible punishments or collateral consequences of conviction.

(Mot. at 36.)  The government argues that evidence or argument of collateral consequences should be precluded because it is not relevant.  (*Id.*)  The government also notes that Defendant has not suggested that he intends to introduce any discussion of these consequences at trial, but moves *in limine* out of an abundance of caution.  (*Id.*) Defendant, in his opposition, asks only for the Court to reserve ruling on this issue.  (Opp. at 7.)

It is axiomatic that "juries are not to consider the consequences of their verdicts" and must undertake their duties as triers of fact without regard for the sentences that may be imposed by the Court following a determination of guilt. *Shannon v. United States*, 512 U.S. 573, 579 (1994) ("The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor between the judge as sentencer and the jury as trier of fact.")  The government's motion *in limine* to preclude evidence and argument regarding collateral consequences and punishment associated with a potential conviction is therefore granted.

## VI.  Defendant's Rule 16(b) Discovery and Trial Exhibits

The government moves for an order directing the Defendant to disclose any documents he intends to use in his case-in-chief during cross-examination of the government's witnesses. (Mot. at 38.) Defendant, relying primarily on *United States v. Harry*, No. 10-cr-1915 (JB), 2014 WL 6065705 (D.N.M. Oct. 14, 2014), appears

to argue that he is not required to disclose the non-impeachment evidence he may offer during cross-examination of the government's witnesses until after the government rests. (Opp. at 7-8.) As a compromise, Defendant proposes disclosing any documents that he wishes to offer solely for non-impeachment purposes, to the extent there are any, "prior to the examination of the witness through which we intend to offer them." (Opp. at 8.)

As a general matter, "Rule 16(b)(1)(A) is applicable only to materials that the defendant intends to use in its 'case-in-chief at trial.'" *United States v. Daskal*, No. 21-cr-110(NGG)(LB), 2023 WL 9424080, at *11 (E.D.N.Y. July 12, 2023). The term "case-in-chief" in the Rule 16 context has been interpreted to refer to "the purpose of the evidence's introduction and not the timing of the evidence's introduction[.]" *Id.* (citing *United States v. Aiyaswamy*, No. 15-cr-568-1 (LHK), 2017 WL 1365228, at *4 (N.D. Cal. Apr. 14, 2017). "Where a defendant cross-examines a government witness to buttress [his] theory of the case, rather than to impeach the testimony given by the witness on direct examination, the cross-examination is properly seen as part of the defendant's case-in-chief." *United States v. Napout*, No. 15-cr-252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017). "Rule 16(b)(1)(A) disclosure thus extends to all non-impeachment exhibits that defense plans to use at trial, 'whether the exhibits will be introduced through a government witness or a witness called

by a [d]efendant." *Daskal*, 2023 WL 9424080, at *11 (citing *Napout*, 2017 WL 6375729, at *11). "Nearly every court to consider the issue has concluded the same." *United States v. Crowder*, 325 F. Supp. 3d 131, 136 (D.D.C. 2018) (citing cases).

Thus, any evidence that Defendant intends to introduce to support his theory of the case – "*i.e.*, those used to substantively challenge the elements of the charged offense rather than only discredit the . . . Witness" – must be disclosed under Rule 16(b)(1)(A). *Daskal*, 2023 WL 9424080, at *11. Accordingly, the government's motion is granted. By May 15, 2025, Defendant must disclose and produce substantive, non-impeachment exhibits, whether he intends to introduce them during cross-examination or after the government rests. This includes all materials Defendant intends to use to "substantively challeng[e] the elements of the charged offense[.]" *Aiyaswamy*, 2017 WL 13665228, at *4.

## CONCLUSION

For the foregoing reasons, the government's motions *in limine* are **GRANTED** in part and **DENIED** in part.

The government's motion *in limine* to admit evidence of the "rules" of the Penn Track, Defendant's interactions with other traffickers, and Defendant's use of coercive and violent tactics against victims other than Jane Does-1 and 2 is **granted**. The government's motion *in limine* to admit evidence of minors on the

Penn Track is **denied without prejudice.**

The government's motion *in limine* to admit certain out-of-court statements is **granted** in part and **denied** without prejudice in part, as delineated specifically above.

The government's motion *in limine* to exclude evidence regarding the "sexual behavior" of certain witnesses is **granted.** Defendant's cross-motion to admit "sexual behavior" evidence is **denied without prejudice.**

The government's motion *in limine* to admit Defendant's prior December 2016 convictions is **granted** in part, with the limitations specified herein, and **denied** in part.

The government's motion *in limine* to compel Defendant to produce discovery and trial exhibits pursuant to Rule 16(b) is **granted.** Defendant shall serve his trial exhibits to be used during his case-in-chief by no later than May 15, 2025.

**So ordered.**

Dated:     May 12, 2025
           Brooklyn, New York

_____
**Hon. Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York