UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

UNITED STATES OF AMERICA,

    - against -                                    **MEMORANDUM & ORDER**

OMARI SCOTT,                                         24-CR-158 (KAM)

              *Defendant*.

----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

Presently before the Court are the government's motions *in limine* to preclude cross-examination of various potential civilian witnesses regarding prior arrests, convictions, violations that resulted in discipline while incarcered, and ███████████ ███. (ECF Nos. 67, 84, 85.) The government also moves *in limine* to preclude cross-examination of its law enforcement witnesses regarding administrative investigations or civil lawsuits against them that did not involve credibility determinations. (*See* ECF No. 67 at 12-26; ECF No. 85 at 5-6.) The government contends that the disclosed information does not bear on the honesty or credibility of these witnesses and is not probative of truthfulness. Defendant, Omari Scott ("Scott" or "Defendant"), opposes the government's motions solely as to certain *Giglio* disclosures of the government's civilian witnesses, but does not oppose the government's motion regarding law enforcement

witnesses.  (ECF Nos. 83, 86.)  For the reasons set forth below, the government's motion is **GRANTED**.

<u>BACKGROUND</u>

**I.   Prior Convictions and Adjudication**

The government identified prior convictions and criminal adjudications for the following civilian witnesses:



- [1] ████████████████████████████████
████████████████████████████████

- Witness-2: ████████████████████████
████████████████████████████████

- ████████████████████████████████
████████████████████████████████

- Witness-6[2]: ██████████████████████
████████████████████████████████

---

[1] The Court identifies the civilian witnesses by the government's designated aliases.



[2] ████████████████████████████████



The government moves *in limine* to preclude cross-examination regarding Witness-1's ███████████████████████; Witness-2's ████████████████████████; Witness-4's ████████████████████████; and Witness-6's ████████████████████████████. (ECF No. 67 at 4, 8, 11; ECF No. 85 at 2-3.)

## II. Prior Violations of Pretrial Release and Supervised Release

The government identified prior violations while on supervised release for the following civilian witnesses:



The government moves *in limine* to preclude cross-examination regarding Witness-1's and Witness-6's prior violations of pretrial release and supervised release. (ECF No. 67 at 4; ECF No. 85 at 3.)

## III. Prior Arrests

The government identified prior arrests that did not result

in convictions for the following civilian witnesses:

- 

- Witness-3:  (ECF No. 67 at 9.)

- Witness-4: 

- 

---

[3] The Court notes that it is unclear whether this arrest took place in June 2013 or June 2014.  Though the government states that this arrest occurred in June 2013, it is chronologically listed in the government's motion as falling between May 2014 and July 2014.  (*See* ECF No. 85 at 2.)

████████████████████████████████

The government moves *in limine* to preclude cross-examination on all the arrests of Witnesses-1, 3, 4, and 6. (ECF No. 67 at 4, 10-11; ECF No. 85 at 2-4.) Defendant opposes the government's motion in part as to Witness-3 and Witness-6. (ECF No. 86 at 2-3.)

## IV. Records of Disciplinary History While in Custody

The government also identified records that include certain violations for which Witness-1 was disciplined while incarcerated. (ECF No. 67 at 5-7.) ████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████ (ECF No. 67 at 5-7.)

The government further identified certain incidents while Witness-1 was in custody. ████████████████████



The government moves *in limine* to preclude cross-examination on Witness-1's disciplinary history while in custody. (*Id.* at 5-7.) Defendant opposes this motion, arguing that Witness-1's "life-long law-breaking bespeaks a willingness to break the law to achieve whatever goals she/he had at the moment, and reflects a level of moral turpitude that bespeaks a willingness to put his personal interests above those of society, which would include his obligation to tell the truth under oath." (ECF No. 83 at 7.)

## V.   Protective Orders

Additionally, the government has identified prior protective orders in connection with the following civilian witnesses.



████████  (ECF No. 67 at 10.)

• ████████


The government moves *in limine* to preclude cross-examination on all of the above protective orders against Witness-1, Witness-4, and Witness-6.  Defendant does not oppose this motion.

**VI.** ████████

████████

████████

████████ ████████

████████

████████

████████

████████

████████

████████

████████

████████ ████ ████████

████████ ████ ████████

████████

████████ ██ ████ ████████

████████

████████ ████ ████████

████████



## VII. Civil Lawsuits

The government identified various civil lawsuits involving its law enforcement witnesses:

- Officer MR[4]: the government identified three civil lawsuits where Officer MR was named as a defendant, where all three cases settled without an adverse credibility determination;

- Detective MS: the government identified three civil lawsuits where Detective MS was named as a defendant, where one is dormant, and two settled without an adverse credibility determination;

- Sergeant PC: the government identified one civil lawsuit where Sergeant PC was named as a defendant. The case is currently pending;

- Detective TM: the government identified four civil lawsuits where Detective TM was named as a defendant, where all four cases settled without an adverse credibility determination;

- Detective MB: the government identified one civil lawsuit

---

[4] The Court identifies the government's law enforcement witnesses by title and initials only.

where Detective MB was named as a defendant. The case is currently pending;

- Detective EL: the government identified three civil lawsuits where Detective EL was named as a defendant. All cases settled without an adverse credibility determination;

- Detective TB: the government identified five civil lawsuits where Detective TB was named as a defendant. Three of those cases settled without any adverse credibility findings, and two cases remain pending;

- Officer AC: the government identified three civil lawsuits where Officer AC was named as a defendant. Two of those cases are pending, and one case settled without any adverse credibility finding;

- Sergeant OC: the government identified four civil lawsuits where Sergeant OC was named as a defendant. All of the cases settled without any adverse credibility finding;

- Detective DR: the government identified three civil lawsuits where Detective DR was named as a defendant. Two cases settled without an adverse credibility determination, and one case was dismissed for lack of prosecution and without any adverse credibility determination;

- Detective DM: the government identified one civil lawsuit where Detective DM was named as a defendant. The case settled without an adverse credibility determination;

- Officer SW: the government identified two civil lawsuits where Officer SW was a named defendant. Both cases settled without an adverse credibility determination;

- Detective RG: the government identified two civil cases where Detective RG was a named defendant. One case has been inactive since the filing of the complaint without any adverse credibility determination, and the other case settled without an adverse credibility determination;

- Detective RL: the government identified one civil lawsuit where Detective RL was a named defendant. The case is pending;

- Detective JR: the government identified two civil lawsuits where Detective JR was a named defendant.  Both cases settled without an adverse credibility determination;

- Detective WF: the government identified one civil lawsuit where Detective WF was a named defendant. The case settled without an adverse credibility determination;

- Officer RA: the government identified two civil lawsuits where Officer RA was a named defendant.  Both cases settled without an adverse credibility determination;

- Detective PB: the government identified five civil lawsuits where Detective PB was a named defendant. Two cases settled without an adverse credibility determination. One case involved a "petition to permit a late claim for false arrest, malicious prosecution, and other claims relating to a dismissed indictment" and did not involve any credibility findings against Detective PB. One case is still pending. Finally, one case was discontinued on plaintiff's motion without any adverse credibility findings;

- Detective AP: the government identified six civil lawsuits where Detective AP was a named defendant. Three cases settled, two are still pending, and one was dismissed against Detective AP.  All cases did not include any adverse credibility determination;

- Ret. Sergeant DV: the government identified two civil lawsuits where Ret. Sergeant DV was a named defendant.  One of the cases was filed in 1988 and is currently dormant. The other case settled without a credibility determination.

The government identified no civil lawsuit involving a credibility finding, and all cases are pending, dismissed, settled, or characterized as dormant.  (ECF No. 67 at 12–26.)  The government moves *in limine* to preclude cross-examination on all the aforementioned civil lawsuits.  Defendant does not oppose this motion.

## VIII.  Administrative Findings

The government also moves to preclude cross-examination of the identified law enforcement officials with substantiated, pending, or closed Internal Affairs Bureau ("IAB") allegations and Civilian Complaint Review Board ("CCRB") allegations. (*See* ECF No. 67 at 12-25.)

The government identified CCRB substantiated, pending, or closed allegations against the following law enforcement witnesses:

- Officer AS: a pending allegation that Officer AS was involved in an incident of physical force, threat of arrest, and threat of summons;

- Detective MS: a closed 2019 allegation that Detective MS was speaking discourteously and making race-based remarks to the complainant;

- Officer AP: noted possible misconduct in 2020 for carrying an insufficient supply of business cards; noted misconduct in 2021 for improper use of body-worn camera; a 2021 substantiated allegation that Officer AP pointed his firearm at a civilian during a traffic stop;

- Officer AC: a 2020 substantiated allegation that Officer AC used physical force;

- Sergeant OC: reported misconduct in 2012 and 2013 for failure to prepare a memobook entry;

- Detective DR: reported misconduct in 2015 for failure to prepare a memo book entry;

- Detective DM: a 2011 substantiated allegation that Detective DM questioned a civilian about the contents of his pocket without founded suspicion and searched and frisked that civilian without responsible suspicion; noted misconduct in 2013 for failure to prepare a memo book

11

entry;

- <u>Officer SW</u>: noted misconduct in 2020 for improper use of body-worn camera; a 2020 substantiated allegation that Officer SW wrongfully searched a person; a 2020 substantiated allegation for failure to produce a stop and frisk report and improper use of body-worn camera;

- <u>Detective RG</u>: reported misconduct in 2016 for failure to prepare a memobook entry;

- <u>Detective RL</u>: noted misconduct in June and September 2010 for failure to prepare a memobook entry; a 2010 substantiated allegation that Detective RL issued a disorderly conduct summons without a factual basis;

- <u>Officer RA</u>: a closed allegation in 2021 relating to the use of physical force;

- <u>Detective PB</u>: noted misconduct in 2010 for failure to prepare a memobook entry;

- <u>Detective AP</u>: a closed allegation in 2020 regarding seizure of property;

The government further identified IAB substantiated allegations against the following law enforcement witnesses:

- <u>Officer MR</u>: a 2021 substantiated allegation that Officer MR had an invoice discrepancy and an incomplete or inaccurate property clerk invoice; a 2019 finding of fault in an automobile accident;

- <u>Detective MS</u>: a 2020 substantiated claim that Detective MS had inaccurate command log entries and had his license plate covered;

- <u>Detective SE</u>: a 2019 substantiated claim that Detective SE had an invoice discrepancy and an incomplete or inaccurate property clerk invoice; a 2018 substantiated claim that Detective SE was at fault in an automobile accident; and a 2018 substantiated claim that Detective SE's identification card was missing and that she failed to safeguard it;

- <u>Sergeant PC</u>: a 2019 substantiated allegation that Sergeant PC lost and therefore failed to safeguard his department cell phone; a 2019 substantiated allegation that Sergeant PC yelled at a complainant and failed to properly investigate an assault case;

- <u>Detective EL</u>: a 2021 substantiated allegation that Detective EL had an incomplete or improper memobook;

- <u>Detective TB</u>: a 2021 substantiated allegation that Detective TB had an invoice discrepancy and an incomplete or inaccurate invoice; a 2021 substantiated allegation that Detective TB's identification card was missing and that he failed to safeguard it; a 2021 substantiated allegation that Detective TB refused to appear before the Traffic Violations Bureau; a 2008 finding of fault in an automobile accident; a 2008 report that Detective TB discovered his identification card missing; a 2007 substantiated allegation that TB failed to safeguard a prisoner's property;

- <u>Officer AC</u>: a 2023 finding of fault in an automobile accident; a 2018 substantiated allegation that Officer AC failed to prepare a complaint report when a perpetrator damaged a mailbox;

- <u>Officer AC</u>: a 2020 finding of fault in an automobile accident;

- <u>Officer BS</u>: a 2023 substantiated allegation that Officer BS threatened to arrest and threatened to damage property in connection with a tenant who was drilling holes into neighboring apartments; a 2020 substantiated allegation that Officer BS failed to properly search a prisoner and contraband was found thereafter; a 2020 partially substantiated allegation that Officer BS failed to properly search a prisoner;

- <u>Detective DR</u>: a pending investigation for shooting a dog in 2021; two 2014 substantiated allegations that Detective DR failed to appear before the Traffic Violations Bureau;

- <u>Detective DM</u>: a 2023 substantiated allegation that Detective DM's identification card was missing and that he failed to safeguard it; a 2017 finding of fault in an automobile accident; a 2012 substantiated allegation for

failure to appear before the Traffic Violations Bureau at the designated time;

- <u>Officer SW</u>: a 2022 substantiated allegation that Officer SW failed to activate his body-worn camera and failed to prepare a stop and frisk report; a 2022 substantiated allegation that Officer SW failed to activate his body-worn camera; 2018 and 2017 findings of fault in an automobile accident;

- <u>Officer DD</u>: a 2012 substantiated allegation that Officer DD failed to appear before the Traffic Violations Bureau;

- <u>Detective RL</u>: a 2022 substantiated allegation that Detective RL lost his parking permit and failed to safeguard it;

- <u>Detective JR</u>: a 2013 and 2009 finding of fault in an automobile accident; a 2011 substantiated allegation that Detective JR failed to appear before the Traffic Violations Bureau;

- <u>Detective OS</u>: a 2008 plea of guilty to an allegation that he testified as a character witness without permission from the Police Commissioner, but pursuant to a trial subpoena; a 2005 substantiated allegation for failure to file an accident report;

- <u>Detective WF</u>: a 2014 substantiated allegation that Detective WF failed to appear before the Traffic Violations Bureau;

- <u>Officer RA</u>: pending allegations for failure to prepare a complaint and domestic incident report and failure to take police action on January 31, 2025; a 2021 substantiated allegation for failure to prepare a complaint report; a 2021 and 2019 finding of fault in automobile accidents;

- <u>Detective PB</u>: a 2012 finding of fault in an automobile accident;

- <u>Detective AP</u>: a 2024 substantiated allegation regarding an incomplete or inaccurate property clerk invoice; a 2013 and 2010 finding of fault in an automobile accident; a 2011 partially substantiated allegation regarding an arrest without giving the arrestee a chance to show her

14

identification;

- Ret. Sergeant DV: a 1992 partially substantiated allegation that Sergeant DV failed to take proper police instruction;

- Detective TM: a 2020 finding of fault in an automobile accident;

- Detective MB: a 2021 substantiated an allegation that Detective MB failed to properly search a department vehicle.

(*See* ECF No. 67 at 12-25; ECF No. 85 at 5-6.)   None of the disciplinary findings before the IAB or the CCRB contained adverse credibility findings.   The government moves *in limine* to preclude cross-examination on all disciplinary history for all the above-mentioned law enforcement witnesses.   (*Id.*)   Defendant does not oppose this motion.

## LEGAL STANDARD

Federal Rule of Evidence 608(b) governs the admission of "evidence of specific act . . . to attack the witness's character for truthfulness[.]"   *United States v. Daniels*, 566 F. Supp. 3d 191, 194 (E.D.N.Y. 2021) (citing *United States v. Peterson*, 808 F.2d 969, 973-74 (2d Cir. 1987)).   The same rule permits a court, "in its discretion, [to] allow inquiry into specific instances of the conduct of a witness on cross-examination, but only if those acts are 'probative of truthfulness or untruthfulness.'" *Id.* (citing Fed. R. Evid. 608(b)).

"In addition to determining whether, on cross-examination, a particular prior act is probative of truthfulness and therefore

permissible under Rule 608(b), the court still must be guided by [Federal Rules of Evidence] 611 and 403 in deciding whether to exercise its discretion to allow cross-examination pursuant to Rule 608(b)." *Id.* (quoting *United States v. Brown*, No. 07-CR-874 (KAM), 2009 WL 497606, at *4 (E.D.N.Y. Feb. 26, 2009) (internal quotation removed)); *see also United States v. Devery*, 935 F. Supp. 393, 407-08 (S.D.N.Y. 1996) ("[C]ase law interpreting the express purpose of Rule 608(b) makes clear that not all prior bad acts are admissible to impeach a witness. Such acts are only admissible insofar as they bear on a witness's propensity for truthfulness or untruthfulness, and, even if the prior act does concern the witness's character for truthfulness under Rule 608(b), its probative value must not be substantially outweighed by its unfairly prejudicial effect under Rule 403.").

## DISCUSSION

### I.  Cross-Examination Regarding Prior Convictions

The government seeks to preclude cross-examination on the prior convictions of Witness-1, Witness-2, Witness-4, and Witness-6.  (ECF No. 67 at 1-11; ECF No. 85 at 1-5.)  Defendant largely does not challenge the government's motion *in limine* to preclude cross-examination on these convictions.  (*See generally* ECF No. 83.)  However, Defendant does seek to cross-examine Witness-2 on ████████████████████████████████████████ to the extent that this conviction involved "some

16

form of deceit." (*Id.* at 7.) Defendant also seeks to cross-examine Witness-6 on the disclosed ███████████. (ECF No. 86 at 2.) Additionally, to the extent that any witness's convictions resulted in a ██████████████████████████████, Defendant seeks to cross-examine the witnesses on those topics. (*Id.* at 7-8.)

### A.   Convictions Over Ten Years Old

Evidence of a witness's prior criminal conviction is admissible for impeachment purposes within certain limits. For convictions more than ten years old, evidence of a defendant's prior felony conviction is admissible "only if its probative value . . . substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). The Second Circuit has held that, under Rule 609(b), "convictions over ten years old [should] be admitted 'very rarely and only in exceptional circumstances,'" *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993), as "convictions more than ten years old have very little or no probative value." *United States v. Mahler*, 579 F.2d 730, 736 (2d Cir. 1978), *cert. denied*, 439 U.S. 872 (1978) and *cert. denied*, 439 U.S. 1104 (1979). When evaluating whether "exceptional circumstances" are present, courts in this Circuit consider several factors including the "nature, age, and severity of the crime and its relevance to the witness's credibility, the importance of credibility as an issue in the case, the availability of other means to impeach the

17

witness, and whether the witness has 'mended his ways' or engaged in similar conduct recently." *Daniels v. Loizzo*, 986 F. Supp. 245, 252 (S.D.N.Y. 1997) (quoting *Sango v. City of New York*, No. 83-cv-5177 (JMM), 1989 WL 86995, at *18 (E.D.N.Y. Jul. 25, 1989)).

Here, many of the disclosed convictions are over 10 years old and "do not involve a consummated act of a false statement or a dishonest act," making it "presumptively inadmissible." *Marshall v. Port Auth. of New York & New Jersey*, No. 19-cv-2168 (LJL), 2022 WL 17491006, at *4 (S.D.N.Y. Dec. 5, 2022) ("Rule 609(b) makes even crimes involving dishonest acts presumptively inadmissible if they are more than ten years old . . . and crimes [that] do not involve a consummated act of a false statement or a dishonest act [are even] less probative."). Witness-1's ███████████████ █████████████████ Witness-2's ████████████, and Witness-6's ███ ████████████████████████████████████████████████████████████ ███████████ are all older than ten years old. Moreover, none of these convictions "involve a consummated act of a false statement or a dishonest act." Accordingly, allowing questioning on these convictions would shed little light on Witness-1's, Witness-2's, or Witness-6's credibility and would instead be "an unnecessary distraction." *United States v. Mohamed*, No. 18-cr-603 (ARR), 2020 WL 1686259, at *2 (E.D.N.Y. Apr. 7, 2020). The government's motion to preclude cross-examination as to these convictions more than a decade ago is, therefore, **GRANTED**.

18

**B.    Convictions Under Ten Years Old**

As to the admissibility of the convictions that are less than ten years old, the court must consider "(1) the conviction's impeachment value, (2) the amount of time that passed between the prior conviction and the trial date, (3) the similarity of the past crime to the charged crime, (4) the importance of the defendant's testimony, and (5) the importance of the witness's credibility to the trial." *United States v. Otufale*, 740 F. Supp. 3d 233, 245 (E.D.N.Y. 2024) (citing *United States v. Hayes*, 553 824, 828 (2d Cir. 1977)). Although all of these factors are relevant, "[p]rime among them is [the first factor, *i.e.*,] whether the crime, by its nature, is probative of a lack of *veracity*." *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977) (emphasis added).

Defendant seeks to cross-examine Witness-2 on Witness-2's ██████████████████████████████████████████████████████ ██████████████████.[5]    (ECF No. 83 at 7.)    However, a witness's conviction for attempted possession of a controlled substance is not probative of credibility or truthfulness. *See United States v. Whitley*, No. 04-cr-1381 (RCC), 2005 WL 2105535, at *3 n.2 (S.D.N.Y. Aug. 31, 2005) (finding a prior conviction for narcotics possession to have "little probative value on the matter of

---

[5] Defendant also asserts that the governme[nt] disclosed convictions were violations of ██████████████████ (ECF No. 83 at 7-8.)

truthfulness" and "evidence of the prior conviction for narcotics possession is not admissible under Rules 609 and 403.") (citation omitted); *United States v. Puco*, 453 F.2d 539, 543 (2d Cir. 1971) ("a narcotics conviction has little necessary bearing on the veracity of the accused as a witness."). Thus, the Court finds that Witness-2's ▮▮▮▮▮▮▮▮▮▮▮ has no bearing on Witness-2's truthfulness or veracity and is inadmissible under Rule 609(a).

As to the other convictions – namely, Witness-2's ▮▮▮▮▮▮▮▮▮▮▮▮, Witness-4's ▮▮▮▮▮▮▮▮▮▮▮, and Witness-6's ▮▮▮▮▮▮▮▮▮▮▮ – the Court finds that none of these convictions contain any acts bearing on a witness's credibility.[6] Accordingly, the government's motion *in limine* to preclude cross-examination as to these convictions is **GRANTED**.

---

[6] Likewise, Witness-1's violation of supervised release and Witness-6's violation of pretrial conditions and supervised release, are inadmissible. In the disc ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮F No. 85 at 1.) *See United States v. Agostini*, 280 F. Supp. 2d 260, 262 (S.D.N.Y. 2003) ("[T]he Second Circuit [has been] inclin[ed] to preclude the discussion of a witness's prior commission of violent crimes because of such crimes' lack of relevance to the issue of the witness's veracity.")

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮aracter for truthfulness, and is thus precluded from inquiry during cross-examination. The Court further finds that the probative value of Witness-1's and Witness-6's violations is substantially outweighed by the risk of undue prejudice. *See* Fed. R. Evid. 403. Thus, Witness-1's and Witness-6's violations of pretrial conditions and supervised release are precluded from inquiry during cross-examination.

## II. Cross-Examination Regarding Prior Arrests and Violations of Release

The government moves to preclude cross-examination regarding the arrests of Witness-1, Witness-3, Witness-4 and Witness-6. (ECF No. 67 at 4-11; ECF No. 85 at 1-5.) Defendant does not assert any specific objections to the government's motion to preclude cross-examination on any of these arrests, but rather, seeks "additional information regarding [] Witness-3's pending theft case so the Court can determine whether the charged conduct involves dishonesty, and, if applicable, ███████████████████████ ██████████████████" (ECF No. 83 at 7-8.)

As an initial matter, pursuant to Federal Rule of Evidence 608, extrinsic evidence "of prior malfeasance by a witness under cross-examination [is permitted] only under very limited circumstances that are probative of truthfulness." *United States v. Ahmed*, No. 14-cr-277 (DLI), 2016 WL 3647686, at *3 (E.D.N.Y. Jul. 1, 2016). It is well settled that such limited circumstances do not include "unproven allegations." *United States v. Dekattu*, No. 18-cr-474 (ARR), 2019 WL 885620, at *1 (E.D.N.Y. Feb. 22, 2019). It follows, therefore, that unproven allegations such as an "[a]rrest[,] without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the

trustworthiness of a witness." *Michelson v. United States*, 335 U.S. 469, 482 (1948).

Here, Defendant argues that the government should disclose further details regarding Witness-3's arrest, so that a determination can be made regarding the arrest's probative value for Witness-3's truthfulness. Defendant provides no compelling justification or authority mandating additional disclosure. Additionally, even a *conviction* of retail theft may not qualify as an offense that is admissible under Rule 609(a). *See United States v. Myerson*, No. 87-cr-796(JFK), 1988 WL 108442, at *1 (S.D.N.Y. Sept. 29, 1988) (excluding conviction of retail theft because it was not an offense "punishable by death or imprisonment in excess of one year."); *see also United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977) (holding that "crimes of stealth . . . or petit larceny . . . do not come within this clause [609(a)(2)]."). Witness-3's arrest for retail theft, which does not appear to have resulted in a conviction, presents even lower probative value and is therefore precluded from cross-examination.

Defendant presents no other compelling argument or authority for the Court to disturb the well-settled principle that "arrests that did not result in convictions are not admissible as specific instances of conduct [for impeachment purposes] under [FRE] 608(b)." *Daniels*, 986 F. Supp. at 252. Accordingly, the government's motion to preclude cross-examination regarding the

22

identified prior arrests is **GRANTED**.

### III. Cross-Examination of Protective Orders

The government moves to preclude cross-examination on expired and active protective orders relating to Witness-2, Witness-4, and Witness-6. (ECF No. 67 at 8-9, 10-11; ECF No. 85 at 1-5.) Defendant does not oppose this motion. The Court finds that the probative value of the disclosed protective orders is insufficient to outweigh the prejudicial effects of such evidence. *See Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 546 (E.D.N.Y. 2011) (finding "the probative value of the Order of Protection and plaintiff's subsequent misdemeanor convictions of criminal contempt for impeachment purposes is insufficient to outweigh the prejudicial effects of such evidence."). Rather than provide any probative value as to the witnesses' veracity, this evidence may instead divert the jury's attention from the relevant issues. Accordingly, the government's motion *in limine* to preclude cross-examination of the disclosed protective orders is **GRANTED**.

**IV.** 





**V.   Cross-Examination Regarding Disciplinary History While Incarcerated**

As described above, the government has identified various disciplinary incidents involving Witness-1 during his incarceration. Defendant argues that Witness-1's "breathtaking history of disregarding laws and rules" indicates "a level of moral turpitude that bespeaks a willingness to put his personal interests above those of society, which would include his obligation to tell the truth under oath." (ECF No. 83 at 7.) Defendant asserts that, "[Witness-1's] conduct is therefore substantially relevant to [his] credibility[.]" (*Id.*)

A court may, on cross-examination, allow "specific instances of a witness's conduct . . . to be inquired into if they are probative of the [witness's] character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). "[E]ven if [a] prior act does concern the witness's character for truthfulness under Rule 608(b), its probative value must not be substantially outweighed by its unfairly prejudicial effect under Rule 403." *United States*

*v. Devery*, 935 F. Supp. 393, 407- 08 (S.D.N.Y. 1996).

Here, the identified disciplinary incidents involving Witness-1 do not include any probative conduct for truthfulness. Instead, Witness-1's conduct largely consists of violent conduct, creating a disturbance, and possession of drugs and alcohol. Such conduct is not probative of a person's character for truthfulness. *See United States v. Estrada*, 430 F.3d 606, 617-18 (2d Cir. 2005) (noting distinction between "crimes that reflect adversely on a person's integrity . . . and acts of violence, which may result from a short temper, a combative nature, extreme provocation, or other causes, [and] generally have little or no direct bearing on honesty and veracity." (internal citations omitted)); *see also Granados-Coreas v. Nassau Cnty.*, No. 18-cv-6092 (AYS), 2022 WL 16575725, at *7 (E.D.N.Y. Nov. 1, 2022) (precluding jail disciplinary infractions). Accordingly, the government's motion *in limine* to preclude cross-examination on Witness-1's prior disciplinary history in custody is **GRANTED**.

## VI. Cross-Examination of Incidents Underlying the Administrative Findings of the Law Enforcement Witnesses

Generally, "[c]omplaints against officers are not probative of a law enforcement witness's truthfulness or untruthfulness unless the underlying conduct involves dishonesty." *Bryant v. Serebrenik*, No. 15-CV-3762 (ARR) (CLP), 2017 WL 713897, at *2 (E.D.N.Y. Feb. 23, 2017). Courts may preclude cross-examination

26

of prior, substantiated instances of officer misconduct where the underlying conduct is not probative of the officer's truthfulness or untruthfulness. *See, e.g.*, *United States v. Horsford*, 422 F. App'x 29, 30 (2d Cir. 2011) (summary order) (precluding cross-examination of CCRB complaint where "the underlying conduct involved no dishonesty"); *United States v. Barret*, No. 10-CR-809 (KAM), 2012 WL 194992, at *2 (E.D.N.Y. Jan. 23, 2012) (precluding cross-examination of several substantiated complaints that did "not involve conduct that bears on credibility").

Further, even where conduct may be initially probative, a court must still weigh whether the probative value outweighs the danger of "unfair prejudice, confusing the issues, misleading the jury [or] wasting time." *Ahmed*, 2016 WL 3647686, at *2 (citing Fed. R. Evid. 403). In this vein, courts may also preclude cross-examination of pending investigations. *See Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 556 (E.D.N.Y. 2011) (finding that "because the CCRB complaints were not substantiate . . . under Rule 403, the probative-prejudice balancing test weighs heavily in favor of excluding the evidence" and precluding plaintiffs "from presenting evidence of CCRB complaints against defendants that remain unsubstantiated").

Here, the government asserts, and Defendant does not dispute, that none of the substantiated IAB or CCRB allegations bear on a witness's credibility. Accordingly, the government's motion *in*

27

*limine* to preclude cross-examination of the above-mentioned administrative findings is **GRANTED**.

## VII. Cross-Examination of Incidents Underlying the Civil Lawsuits

Finally, the government seeks to preclude cross-examination regarding civil lawsuits filed against its law enforcement witnesses. (ECF No. 67 at 12-25.) The government states that none of the disclosed civil lawsuits include any adverse credibility determination. (*Id.*) Defendant does not oppose the motion, and indicates that he will not seek to cross-examine the government's law enforcement witnesses on the disclosed civil lawsuits. (ECF No. 83 at 1.)

Civil lawsuits against government law enforcement witnesses that offer only unproven allegations or that have settled "lacking any adverse findings" are not "probative of the witness' truthfulness." *Ahmed*, 2016 WL 3647686, at *3; *see also United States v. Jackson*, No. 19-CR-356 (ARR), 2020 WL 6558215, at *3 (E.D.N.Y. Nov. 9, 2020) (finding that because "[a]ll of the civil lawsuits brought against the government's witnesses are either currently pending or have already ended in settlement without any admission of wrongdoing by the defendant or adverse credibility finding by the court," there was "no reason to believe that the underlying files are likely to contain material that is relevant to the credibility of the witnesses").

Here, the government moves to preclude cross-examination regarding civil lawsuits against the aforementioned law enforcement witnesses.  Defendant does not oppose this motion.  As discussed above, the civil lawsuits the government identified have settled, been dismissed, are dormant, or are pending without the government's knowledge of any adverse credibility finding. (*See* ECF No. 67 at 12-25.)  These lawsuits are not "probative of the witness' truthfulness."  *Ahmed*, 2016 WL 3647686, at *3; *see also Jackson*, 2020 WL 6558215, at *3.  Accordingly, the government's motion to preclude cross-examination on these civil lawsuits is **GRANTED**.

**CONCLUSION**

For the foregoing reasons, the government's motion *in limine* to preclude Defendant from cross-examining certain civilian and law enforcement witnesses on the disclosed *Giglio* materials is **GRANTED**.

**So ordered.**

Dated:    May 13, 2025
          Brooklyn, New York

_____
**Hon. Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York