

U.S. Department of Justice

United States Attorney
Eastern District of New York

EMR/ALK/MG  
F. #2023R00402

271 Cadman Plaza East  
Brooklyn, New York 11201

May 27, 2025

By ECF

The Honorable Kiyo A. Matsumoto  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

   Re: United States v. Omari Scott  
     Criminal Docket No. 24-158 (KAM)

Dear Judge Matsumoto:

  The government respectfully submits this letter in opposition to the defendant Omari Scott's application that the Court order the government to immunize proposed defense witness Aaliyah Ruiz. Specifically, the defendant requests that the Court order the government to immunize Ms. Ruiz for her testimony in court. Counsel for Ms. Ruiz has stated that she intends to invoke her Fifth Amendment right against self-incrimination if asked about prostitution or about her prior statements made to the government and federal agents.

  The government is currently seeking internal permission to grant immunity for Ms. Ruiz's testimony where such immunity would be limited to only her own personal engagement in prostitution. However, the Court should deny Scott's application to order the government to immunize Ms. Ruiz regarding her prior statements, which would otherwise provide Ms. Ruiz with what is effectively a non-prosecution agreement absolving her of criminal responsibility for any false statements she previously made to law enforcement.

  A. Legal Standard

  "The [F]ifth [A]mendment due process clause does not mandate that 'defense witness immunity must be ordered whenever it seems fair to grant it.'" United States v. Pinto, 850 F.2d 927, 935 (2d Cir. 1988) (quoting United States v. Turkish, 623 F.2d 769, 777 (2d Cir. 1980)). The government is "under no general obligation to grant use immunity to witnesses the defense designates as potentially helpful to its cause but who will invoke the Fifth Amendment if not immunized." United States v. Ebbers, 458 F.3d 110, 118 (2d Cir. 2006). Instead, the Second Circuit has consistently held that the "government may not be compelled to grant a defense witness immunity absent 'extraordinary circumstances.'" Pinto, 850 F.2d at 935 (quoting United States v.

Praetorius, 622 F.2d 1054, 1064 (2d Cir. 1979)).  Notably, the Second Circuit has stated that "the situations in which conferring immunity would be required are so few and exceptional that we have yet to reverse a failure to immunize." United States v. Melendez, No. 20-3876-CR, 2022 WL 3640449, at *4 (2d Cir. Aug. 24, 2022) (quoting United States v. Stewart, 907 F.3d 677, 685 (2d Cir. 2018)).

The Second Circuit employs a "three part test for determining whether there are exceptional circumstances warranting a directive that the government grant immunity to a defense witness." United States v. Diaz, 176 F.3d 52, 115 (2d Cir. 1999).

> First, the district court must find that the government, through its own overreaching, has forced the witness to invoke the Fifth Amendment or . . . that the government has engaged in discriminatory use of grants of immunity to gain a tactical advantage; second, the witness['s] testimony must be material, exculpatory and not cumulative; and third, the defendant has no other source to obtain the evidence.

Id.; see generally United States v. Bahadar, 954 F.2d 821, 826 (2d Cir. 1992).  "The defendant bears the burden of convincing the court that each of these elements is present."  Pinto, 850 F.2d at 935.

B.   Discussion

The record clearly establishes that Ms. Ruiz's refusal to testify is not the product of government "overreach."  Nor is it the result of a discriminatory use of immunity grants.  As such, the defendant has failed to establish the foundation necessary for a Court-ordered grant of immunity.

With respect to "overreach," the Second Circuit has held that conduct that could theoretically justify court-ordered immunity involves the use by the government of "threats, harassment, or other forms of intimidation [which have] effectively forced the witness to invoke the Fifth Amendment." Ebbers, 458 F.3d at 119 (quoting Blissett v. Lefevre, 924 F.2d 434, 442 (2d Cir. 1991) (alteration in Ebbers)).  There is no evidence of any such intimidation by the government.  In meetings between Ms. Ruiz and the government—which occurred in November 2023 and February 2024—Ms. Ruiz was represented by counsel, who was present.[1]  Subsequent to those meetings, the government did not communicate with Ms. Ruiz.[2]  Significantly, once the government learned that Ms. Ruiz may be called as a witness at trial, the government

---

[1]   Prior to those meetings, and as the Court is aware from trial testimony, Ms. Ruiz was arrested in May 2023 for prostitution, after which she spoke with law enforcement during a post arrest interview.

[2]   In connection with this trial, in March 2025, law enforcement contacted Ms. Ruiz by phone to inform her of the upcoming trial date and of the government's discovery obligations leading up to trial, including turning over notes of the meetings with Ms. Ruiz.  Law enforcement also informed Ms. Ruiz to contact them about any safety concerns.

recommended to the Court that it appoint legal counsel for Ms. Ruiz in advance of her testimony given the potential for untruthful statements from Ms. Ruiz. See United States v. Tavarez, 648 F. App'x 16, 19 (2d Cir. 2016) (finding no government overreach where government did not directly threaten witness and merely discussed possible criminal exposure with witness' counsel, who later advised witness to invoke his Fifth Amendment privilege).

The government does not intend to immunize Ms. Ruiz for her prior statements to law enforcement because it believes that she has not been truthful in multiple, material respects and thus has potential criminal exposure for making false statements to the government. The government has never offered Ms. Ruiz a non-prosecution agreement, and the government's decision not to immunize Ms. Ruiz for false statements at trial cannot be the result of any discriminatory use of immunity. See, e.g., United States v. Rodriguez, 187 F. App'x 30, 34 (2d Cir. 2006) ("[T]he perceived falsity of Cherry's statement resulting from, among other things, its conflict with his prior statements to government agents—only highlights that Cherry's invocation of the privilege 'was not the result of a discriminatory use of immunity by the government[']. . . . [but rather] seem [s] to be solely the result of [Cherry's] own willingness to change his story'") (quoting Bahadar, 954 F.2d at 826); United States v. Rosen, 716 F.3d 691, 704 (2d Cir. 2013) ("[T]he Government may reasonably refuse to grant immunity where a witness is a potential target of criminal prosecution.").

That no charges have yet been filed (or may ever be filed) against Ms. Ruiz for false statements does not render the government's identification of this exposure—as grounds for the Court to ensure Ms. Ruiz's access to counsel—an act of bad faith or an example of government overreach. See Turkish, 623 F.2d at 777 (2d Cir. 1980) ("[A] prosecutor without enough evidence to seek indictment may legitimately prefer to maintain his option to prosecute on the basis of later information. It cannot fairly be argued, where the prosecutor declines to consent to use immunity, that the absence of present intention to prosecute is evidence of intention to distort the fact-finding process."). To the contrary, the government's purpose in proposing appointed counsel for Ms. Ruiz was to ensure that Ms. Ruiz did not incriminate herself without the benefit of counsel. There could be no credible claim on these facts that the government is threatening to bring an otherwise unjustified charge against Ms. Ruiz in retaliation for her anticipated trial testimony. See Reiter v. United States, 371 F. Supp. 2d 417, 460 (S.D.N.Y. 2005) ("Where the witnesses for whom immunity is sought are actual or potential targets of prosecution, 'trial judges should summarily reject claims for defense witness immunity . . . .'" (quoting Turkish, 623 F.2d at 778) (emphasis added)). There is thus no showing of a "tactical purpose" by the government here. Ebbers, 458 F.3d at 119.

Nor has the government engaged in discriminatory grants of immunity. Only one of the government's trial witnesses was granted letter immunity, which the government provided in response to the witness's indication that she would invoke her Fifth Amendment privilege against self-incrimination if asked questions about her engagement in the theft of watches from prostitution customers and her September 2022 grand larceny arrest in connection with one such theft. Significantly, another trial witness who testified about engaging in prostitution did not seek immunity, and the government did not grant that witness immunity. The government also called two trial witnesses who entered into cooperation agreements with the government, who were not similarly situated to Ms. Ruiz. See, e.g., Stewart, 907 F.3d at 685 (no discriminatory grant where witnesses were not similarly situated).

3

The government has a valid, law enforcement purpose in refraining from immunizing an individual who lies during meetings—namely, to avoid a precedent where witnesses can expect to lie to law enforcement without consequences. A grant of immunity in such circumstances would serve not as a mechanism for ensuring fairness at trial, but rather as a vehicle for undermining law enforcement's legitimate interest in obtaining truthful statements from people who have personal knowledge of crimes under investigation. This cannot be the remedy the law demands under the present circumstances.

C.   Conclusion

For these reasons, the Court should deny the defendant's application to compel the government to immunize Aaliyah Ruiz.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:   /s/
Erin M. Reid
Anna L. Karamigios
Miranda Gonzalez
Assistant U.S. Attorneys
(718) 254-6183